Parsons, C. J.
This action is brought to recover of the defendant compensation for repairing a corn-mill, of which the parties were, when the action was commenced, tenants in common. The declaration contains several counts.
In the first, the plaintiff declares that on the 1st of June, 1802, he was. seised of three fourth parts of the mill in fee, *and one Joanna Lucas of the other fourth part, for [*560] term of her life, the reversion of which belonged to the defendant; that the mill being then out of repair, Carver and the tenant for life agreed that it should be repaired; and, as she was unable to repair her fourth part, Carver should make all the repairs, and should receive her fourth part of the profits until he was reimbursed out of it one fourth of the expenses of the repairs; that Carver accordingly made all the repairs, one fourth part of the expenses of which amounted to 78 dollars 63 cents, with the interest, and received all the profits so long as the tenant for life lived, and afterwards until the 4th of February, 1805, when the defendant entered, who has ever since taken his fourth part of the profits, leaving the sum of 36 dollars 45 cents, part of the expense of repairing the fourth part, in arrear and unpaid; of all which the defendant has had notice, but has refused to pay the sum in arrear.
The second count is a quantum meruit for repairing one fourth of the mill, the property of Miller, done at the request of Joanna Lucas, the tenant in possession, and which Miller promised to pay.
The third count is a general indebitatus assumpsit for money laid out and expended by the plaintiff for the defendant’s use.
The fourth count is also a general indebitatus assumpsit for money had and received.
The verdict in this case was found by the consent of the parties, subject to the opinion of the Court on the following facts : That in July, 1802, Carver was seised of three fourth parts of the mill in fee, and Joanna Lucas of the other fourth part thereof, as tenant in dower, the reversion in six elevenths of which belonged to the heirs of her husband, Barnabas Lucas, and in the other five elevenths to Miller; that Carver and Joanna Lucas then; agreed that Carver might repair the mill, and reimburse himself out of the profits; that he thereupon repaired it, one fourth of the expenses of which are truly alleged in his declaration, and afterwards he received all the profits during Joanna Lucas’s life, and afterwards until the 4th of February, 1805, when Miller, having purchased the interest of the heirs of Barnabas Lucas, entered, and has received one fourth of * the profits ever since, leaving the sum of [ *561 ] 36 dollars 45 cents, part of the expenses of repairing the said fourth part, unpaid and in arrear. The question submitted to *492 the Court is, whether, in this action, Carver can recover against Miller the said arrears, or any part of them. And the verdict is to be made conformable to the opinion of the Court.
In examining the facts, there does not appear to have been any express promise of Miller to reimburse Carver any part of the expenses of the repairs. And if Carver can recover in this action, it must be maintained in consequence of some legal obligation im posed on Miller by the common law, or by the statute of 1795, c. 74.
At common law, if there be two joint-tenants, or tenants in common, of a wood, or of arable land, the one has no remedy against the other, to make enclosures or repairs for the safeguard of the wood, or crop. But a house or a mill is of higher legal consideration; and one joint-tenant, or tenant in common, may have a writ de reparatione facienda against the other; for each one is holden to repair and sustain his house or mill. (1).
Whether this maxim of the common law, as applied to mills, is in force here, may be doubtful, especially since the provincial statute of 7 Anne, c. 1, was passed, which was revised by the statute before mentioned. In the early settlement of this country, mills were erected over streams of water then sufficient, but which, by the clearing of the country, have so far failed, that the mills could now be wrought but a small part of the year; and the profits would not be a sufficient inducement to keep them in repair. To this discouragement may be added the erection of new mills in the neighborhood, in more convenient situations. And, as to saw-mills, the consumption of all the timber in their vicinity has rendered many of them useless. As there have been many mills heretofore erected, which could not now be wrought with adequate profit, it would be unreasonable to enable any individual part owner to compel his partners, in all cases, to keep their mill in repair. And [ * 562 ] the statute has * accordingly provided that if a pari owner will repair against the consent of his partners, he shall look to the profits only for his reimbursement.
But it is not necessary now to determine whether this common law remedy can or cannot be applied, at this time, by our courts; for the action of contribution lay by a tenant in common, or joint-tenant, against his co-tenants only, and not against a reversioner. For the consideration, on which the writ is founded, is the perception of the profits by all the parties to the action; and he in remainder or reversion is not entitled to the profits. (2)
If, therefore, this action can be maintained, it must be supported *493 on the statute of 1795, c. 74. It is not very easy to give a construction to some parts of this act, so far as it provides a new remedy. By the sixth section, if the major part of the proprietors in interest of any mill shall agree to repair or rebuild, they may do it, and they shall be reimbursed out of the profits of the mill, in case any proprietor shall refuse to agree to the repairs or rebuilding, or to pay his proportion of the expenses; and they may have their actions against the deficient proprietor to recover the same. But any particular contract to repair or rebuild, entered into by the proprietors, shall not be avoided by this act.
It seems, therefore, that when all the proprietors contract to repair or rebuild, and to pay the charges, a remedy must be had on the contract, if it be broken, and not on the act. (a) But, if any proprietor shall refuse to contract, then if the mill be repaired or rebuilt at the charge of the greater part in interest of the' proprietors, they shall be entitled to a reimbursement out of the profits of the deficient proprietor, and may maintain an action against him; but if his profits should be insufficient, they can have no other remedy. And the action is not given against the heirs or assignees of the deficient proprietor, but against him only; and, consequently, the profits are not charged, by the words of the statute, if his share of the mill shall be vested in others.
From the facts in this case, there was no refusal to repair or to pay, on the part of the tenant in dower, but an express agreement * that Carver should make all the repairs, and [ * 563 ] receive the profits until he was paid. He cannot, therefore, claim any benefit under this statute; and if, by the death of the widow, he is no longer entitled to all the profits under his contract, and suffers a loss, it is in consequence of the nature of his contract, which, as to his receipt of the profits, was determined by the death of the tenant in dower. He is no longer entitled to those profits, or to their value, unless the tenant could, by her contract, charge them after her decease in the hands of the reversioner.
But we know of no legal principle on which she could thus charge them ; and a power of this kind would be very unreasonable. She held this estate subject to impeachment for waste: and if, through her refusal or neglect, the mill had been suffered to decay, it would have been waste, for which she would have forfeited the place wasted, and treble damages, to be recovered by thé reversioners. If she could, by charging the profits in the hands of the reversioners, repair the mill, she would protect herself against them at their own expense. We are, therefore, satisfied that the plaintiff *494 cannot call upon the reversioners for the expenses of any part of the repairs, which he made pursuant to his express contract with the tenant in dower.
When a deficient proprietor is answerable in an action to the proprietors who have repaired, he cannot be holden to pay beyond the value of the profits he may receive. If, therefore, an action of the case was the proper suit, the declaration ought to contain an averment of the value of the profits received, to furnish a measure for the damages to be recovered. This averment has not been made by the plaintiff; nor does it appear either in the declaration, the verdict, or the case agreed, what profits the defendant received. But the proper action is account for the profits, charging the defendant with being the bailiff of the plaintiff; for if the plaintiffs have a lien upon them, the defendant must be liable to account for what he has received.
If such deficient proprietor, being tenant in fee, shall, after the repairs made, aliene or die, before the charges are reimbursed, it may deserve consideration, whether, within the equity, [ *564 ] * although not within the words of the act, his assignees or heirs may not be holden to account. For the deficient proprietor might lawfully have charged his interest in the mill with the reimbursement, and they hold the estate under him. But it is not necessary now to decide this point; for the reversioner does not claim either as heir or assignee.
By the seventh section of the statute, it is enacted that, for the purpose of repairing or rebuilding under this act, a guardian of a minor, a husband of a feme covert, tenant for years, for life, in mortgage, or in tail, who are entitled to receive the profits of the mill, shall be deemed proprietors. And all advances made by them respectively, shall be recoverable by action against the minor, heirs of the feme covert, remainder man, reversioner, or the other party to the mortgage, if not adjusted and paid by agreement. This section, whatever may be its construction, cannot apply to the present action, for it is not brought by tenant in dower against the reversioner for advances by her made.
The intent of this section is certainly obscure. It is easy to understand that guardians shall be reimbursed their advances out of the estates of their wards, and tenants for years, in some cases, by their landlords. Perhaps the husband ought, sometimes, to be repaid by the heirs of his wife, after her decease, if he was not tenant by the courtesy. But it is difficult to conceive why tenants for life, answerable for waste, should be paid for repairs which they were obliged to make, under the penalty of forfeiting the estate with the treble damages. If they have voluntarily incurred ex *495 penses not required by their tenures, and of which he in remainder or reversion will have the benefit, for these expenses a repayment may be intended. But why tenant in tail should be provided with a remedy, when he may, at his pleasure, become tenant in fee simple, requires some explanation, unless the mill should not be worth the expenses; and then the mill ought not to have been repaired.
Sproat and B. Whitman for the plaintiff.
Padelford and Thomas for the defendant.
It is unnecessary to consider the other counts. For the second count is quite unsupported, Miller not having the property of the quarter of the mill, when the repairs were made.
* A general indebitatus assumpsit cannot be maintained [ * 565 ] upon this statute, and there is no express promise admitted.
As we are of opinion that the facts agreed do not support either of the counts, the verdict must be set aside, and a general verdict entered for the defendant, and judgment be rendered accordingly

 11 Rep. 82, b. — Co. Litt. B. 3, c. 4, § 323.

 F. N. B. 295.

 [Convers vs. Ferre & Al. 11 Mass. Rep. 325.—Ed.]