## ELISHA DOANE *versus* DANIEL BADGER.

One claiming a privilege in a well and pump situate in the land of another, each being bound to contribute his proportional part of the repairs, can have no action against him whose land the well is in, until after a request and refusal to repair.

THIS was an action of trespass upon the case, the plaintiff's declaration containing three counts.

The first count sets forth, that the plaintiff was seized, on the 1st day of January, 1807, of certain closes, with the dwellinghouses thereon, situate in *Boston*, and described in the declaration ; and that there was a certain well and pump in a certain close of the defendant, and " that, from the time whereof the memory of man to the contrary does not exist, the plaintiff and those under whom he holds his said closes, and whose estate he has, used at all times freely 'o use the said well and pump, and to draw and take water from said

well by said pump ; the plaintiff, and those whose estate he holds, paying for the repairs of said pump, and the cleansing of said well, their proportion, when thereto requested ; " and that the said *Elisha*, and those whose estate he had, paid accordingly ; that the well was in a good state of repair, * and well cleansed ; and   [ * **66** ] that the defendant, on the said first day of January, cut up and removed the pump, and enclosed the well, and prevented the plaintiff from taking water therefrom.

The second count alleges, that the plaintiff was seized of a certain close in *Boston ;* and, as in the first count, that he and those whose estate he holds used to take water from the well in the defendant's close ; and that the defendant shut up and enclosed said well from the said first of January until the date of the plaintiff's writ.

The third count alleges, that the plaintiff was, on the first of January, 1807, seized of a close in *Boston ;* and that he, and those under whom he holds, used to take water from a well situated in the defendant's close ; and that the defendant had erected a building over said well, and deprived the plaintiff of the use thereof. The original writ was dated the 16th of June, 1808.

The general issue being joined, the action was tried upon review before the late Chief Justice *Parsons,* at the sittings here after March term, 1813.

The plaintiff, to maintain the issue on his part, produced in evidence the division of *John Marshall's* estate among his heirs on the 28th of May, 1733 ; also a division among the heirs of *Thomas Marshall,* on the 22d of November, 1746.

It was proved that the defendant's title was derived from *Christopher Marshall,* and that the well was within the land set off to him. The plaintiff's title was proved to be derived from the other heirs of the said *Thomas Marshall.* The assignment to *Christopher Marshall* was, " reserving the privilege of well and pump to the children and heirs hereafter mentioned." The assignment to the other heirs of *Thomas Marshall* was, " with a right and privilege in the well and pump, they paying at all times hereafter their proportional part of the charge in the maintenance of said well."

* The plaintiff proved that the well had existed, and was   [ * **67** ] used, more than sixty years before the commencement of the action ; and that *Samuel Bangs,* who owned the estate now owned by the defendant, made some repairs of the well and pump in the years 1785 and 1786 ; since which there was no evidence of any repairs having been made.

The defendant proved, that, when he purchased the land in which the said well and pump were, namely, on the 30th of October, 1801, the pump had been suffered to decay, and could not then be used ;

that the water was bad and unfit for drinking ; and that the occupants of the houses owned by the plaintiff had used other wells and pumps in the neighbourhood, to get water to drink and for cooking.

The plaintiff did not offer any evidence, to prove that the well and pump were in good repair and well cleansed on the 1st of January, 1807, as alleged in his first count. But the defendant proved that the well and pump were not in such repair as that water could be had at said well and pump at any time after the purchase of the premises by him, or for some time before.

Upon this evidence the jury were instructed by the judge who tried the cause, that the purchase of the estate by the defendant, incumbered with the right of those persons who claimed under other heirs of *Thomas Marshall*, as set forth in the deed of partition, required of the defendant to keep the well and pump in repair, notwithstanding the same were out of repair and unfit for the purpose of drawing water when he purchased, without any previous demand upon him by the plaintiff or his tenants ; and that the jury were to estimate the damage which the plaintiff had sustained by the defendant's neglect to make repairs.

The jury returned a verdict for the plaintiff, and assessed his damages at $100. The defendant contended, that the words of the partition deed, dated November 22d, 1746, did not oblige him to repair the well and pump, they being in a ruinous condition at the time of his purchase, the pump incapable of being repaired, and the water in the well being known to be bad and unfit for [*68] family *use ; that he, being disposed to abandon any right or benefit which he might have from the well, was not bound to repair the well and put a pump into the same, without the request of the tenants of the estate to which the said well and pump had been made appurtenant ; and that, no such request having been made, the defendant had a right to presume that the said well and pump had been abandoned by the common consent of the parties interested in them ; and the jury ought to have been so instructed : and that, without such request and notice to repair, made on the part of the plaintiff, he was not entitled to maintain this action.

If the Court should be of opinion that the plaintiff's evidence did not support either count in his declaration, or that the direction of the judge to the jury was erroneous, a new trial was to be granted ; otherwise judgment was to be rendered on the verdict.

The cause was argued at the last March term by *Bigelow*, for the plaintiff, and by *W. Sullivan*, for the defendant ; and at this term the opinion of the Court was pronounced by

JACKSON, J. The injury complained of in all the three counts of the plaintiff's declaration is substantially the same. It is, that the defendant removed the pump, and erected a building over the well

and enclosed it, so as to deprive the plaintiff of the use of the well and pump.

We see no objection to the evidence produced by the plaintiff, to maintain his title as set forth 'in the declaration ; and, if he had also proved the injury as alleged, there appears to be no legal objection to his recovering damages.

It was suggested at the argument, that there was evidence produced at the trial, to prove the specific injury as alleged ; and that it was probably not reported, as having no influence on the questions raised on the trial.

But, supposing that this could now be made to appear ; still, as the jury were instructed to assess the damages, " which the plaintiff had sustained by the defendant's neglect to make repairs," it is necessary to consider whether the defendant is liable for such damages under the circumstances * of this case. For, if he is not so [ * **69** ] liable, the verdict must be set aside ; as we cannot know how much the jury may have assessed on that account.

The first objection is, that the declaration does not set forth any such neglect, as the ground of damage ; but relies altogether on a misfeasance by the defendant.

There is an important difference between these two kinds of injuries. If one has a private way over my land, I am liable to an action for stopping the way, but not for suffering it to be out of repair. And, in cases where a defendant would be liable for a non-feasance, as well as for a misfeasance, the declaration ought to show distinctly with which of them he is charged, that he may prepare his defence accordingly. It seems, therefore, very clear, that, as this declaration now stands, evidence of the defendant's neglect to make repairs was inadmissible ; and that no damages ought to have been assessed for such neglect.

There is another objection, which applies to the merits of the case, as it appears in the report ; and which we think would be conclusive in favor of the defendant, even if this neglect had been distinctly alleged in the declaration. It appears, that the well and pump were out of repair and could not be used in 1801, when the defendant purchased the land in which they are situated ; that they had been in that state some time before, and so continued to the time of bringing this action ; and that the plaintiff had never given any notice to the defendant, nor requested him to make the repairs. Considering the plaintiff's title as proved by prescription, we may suppose that some former owner of the defendant's estate granted to the plaintiff, or those whose estate he has, the right to use the well and pump, on the condition mentioned in the declaration ; or, perhaps, that the two estates, or messuages, were formerly held in common,

with the well and pump appurtenant to both, and that the messuages were divided between the respective owners, leaving the use of the well to be still held in common, as appurtenant to each messuage.

[ * **70** ]      * If it is to be considered as a grant, we must suppose a covenant originally annexed to it, and running with the land of both grantor and grantee, in order to bind the grantor and his assigns to make the repairs. But the declaration is not founded on any such supposed covenant, or prescriptive obligation, to repair ; nor is there any thing in the evidence, tending to prove such a state of things. The case, in this view, resembles more a right of way for one man on the land of another, in which, as before observed, the latter is not liable to any action for suffering the way to be out of repair, unless he is expressly bound by contract or prescription to keep it in repair. (1)

The other supposition is more favorable to the plaintiff, and comports better with the evidence ; namely, that the well, as such, is held in common by the plaintiff and defendant, as appurtenant to their respective messuages. Considering it in this view, and that there is no prescription or agreement alleged, binding either party exclusively to make the repairs, it is clear that the action cannot be maintained, without a previous request by the plaintiff to the defendant, to join in making the necessary repairs.

This action upon the case seems to be a substitute for the old writ *de reparatione facienda*, which lies where one tenant in common or joint-tenant of a house or mill, &c, " is willing to repair, and the other will not." † These words (2) seem to imply that the defendant has had notice of the plaintiff's intention to repair, and that he has refused, on request, to contribute his proportion. But, without relying on these expressions, the consequences of the contrary opinion are conclusive.

If one tenant in common could, in the case supposed, maintain such an action, without any previous refusal by his cotenant to contribute, the latter might, for the same cause, maintain the like action against him. In other words, the defendant would have suffered the same injury as the plaintiff, and would have an equal right to recover damages. If the two cotenants tacitly agree to permit the
[ * **71** ]  house or its * appurtenances to go to decay, neither can complain of the other, until after a request and refusal to join in making the repairs. From the form of the writ in the regis-

(1) *Taylor* vs. *Whitehead, Doug.* 716.
† *Loring* vs. *Bacon,* 4 *Mass. Rep.* 475. — *Carver* vs. *Miller,* 4 *Mass. Rep.* 559. — *Converse* vs. *Ferre et al.,* 11 *Mass. Rep.* 325
(2) *Co. Lit.* 200. — *Fitz. N. B.* 295.

ter, (3) it seems, that the plaintiff, before bringing the action, had repaired the house, and was to recover the defendant's proportion of the expense of those repairs. † The writ concludes "*in ipsius dispendium non modicum et gravamen.*" It is clear, that, until he have made the repairs, he cannot, in any form of action, recover any thing more than for his loss, as of rent, &c., while the house remains in decay. For, if he should recover the sum necessary tc make the repairs, there would be no certainty that he would apply the money to that purpose.

But, however that may be, we are all of opinion, that a cotenant could not recover any damages whatever, until after such request and refusal.

The verdict is set aside, and a new trial granted.

(3) *Page* 153.
† *Carver* vs. *Miller*, 4 *Mass. Rep.* 559. — *Mumford* vs. *Brown*, 6 *Cowen*, 475.

---

† (*) NATHANIEL A. HAVEN AND OTHERS *versus* WILLIAM GRAY.

An insurance was for $ 11,000 on certain specific articles, valued in the policy at $ 11,400, at and from the *United States* to *Europe*, for the purpose of disposing of the outward cargo and procuring a return cargo, and at and from thence to the port of discharge in the *United States*. — A memorandum was attached to the policy, in the following words; "*It is understood that the risk is to attach to the proceeds of the articles mentioned in this policy in the return cargo.*" The ship arrived at *Cronstadt*, where, the markets being dull, the cargo was consigned to a mercantile house there, and a return cargo taken on credit, before the said outward cargo was sold. A total loss happening on the return voyage, the underwriters were holden liable. But it was holden necessary that it should appear that the return cargo was intended as a substitute for the outward cargo, and might fairly be considered as the proceeds of the same.

THIS action was *assumpsit* upon a policy of insurance, dated March 19th, 1811, by which the defendant assured for the plaintiffs $ 11,000 upon 100 bales of *Louisiana* cotton, valued at $ 94 each, and 25 tons of logwood, valued at $ 80 per ton, on board the ship *Alfred*, at and from *Portsmouth*, in *New Hampshire*, to one or more ports in *Europe*, north and east of the *Elbe*, one or more times, for the purpose of disposing of her outward, and procuring a return cargo, and at and from thence, to her port of discharge in the *United*

† Judge *Jackson*, having been retained as counsel in this and the other actions to which an asterisk (*) is prefixed, did not sit in the hearing or adjudication thereof.