## SAMUEL RUNNELS *vs.* MOSES BULLEN.

*A.* granted to *B.* by deed one half of a mill dam, with the privilege of taking the water from any part of the half granted; it was held that the deed passed the right to the use of one half of the water only, and that case might be maintained against the grantee for taking more than one half the water to the injury of the grantor.

CASE for opening sluice ways in a certain dam in Turkey river, in Concord, and diverting the water from the plaintiff's mills.

The cause was tried here at September term, 1822, upon the general issue, and a verdict taken for the defendant, subject to the opinion of the court upon the following case:

In July, 1818, one *Frederick Runnels* being seized of the dam, mentioned in the declaration, and of the land under and adjacent to it, and of a clothier's mill worked by water from the pond made by the said dam, and standing on the south side of the said Turkey river, demised to one *Amos Frye* " a certain parcel of land, situate in said Concord, on " the northerly side of Turkey river, nearly opposite to " the clothier's works belonging to the said *Runnels*, being " the place where *Kendall's* saw mill formerly stood, be- " ginning at the intersection with said river of the road " leading from said Concord to Dunbarton, thence down " said river about four rods, thence northerly about two " rods, thence easterly about four rods to the road aforesaid, " and on said road about two and a half rods to the place " of beginning, with the privilege of erecting and continu- " ing thereon a grist mill, and any other building neces- " sarily connected therewith; also, the building standing " on said river opposite to said parcel of land, now occupied " for carding wool; also, the privilege of taking water at " all times from said mill pond immediately above said " clothier's works, and from which said works are suppli- " ed, sufficient for carrying any carding machinery in said " building; and also the privilege of taking water as afore- " said for the purpose of carrying such grist mill as may " be erected on said parcel of land whenever there shall be " more than a sufficiency in said mill pond for carrying the " clothier's works aforesaid, or whenever the water may

" be taken without injury to said works," to hold for the term of ten years, at an annual rent of $38, the said *Frederick* to keep said dam in repair at his own expense.

*Frye*, soon after the above mentioned lease was made, erected a grist mill upon the land leased, and continued to occupy the premises until January 19, 1821, when the said *Frederick* conveyed to him by deed " a certain piece of land " situate in said Concord, on the northerly side of Turkey " river, whereon the said *Frye's* grist mill now stands, be- " ginning at an old elm stump on the westerly side of the " road leading from Concord to Dunbarton, and on the " northerly side of said river, thence northerly adjoining " said road about two and a half rods to a stone wall, thence " westerly the general course of said wall six and a half " rods to a stake and stones, thence turning southerly about " five rods into said river, thence up said river, including " the grist mill on the premises and the northerly half of the " mill dam, to the place of beginning, containing about " twenty-four square rods of land and water, more or less ; " also, the privilege of taking the water from any part of " said northerly half of the mill dam, for the use of the said " *Frye*, his heirs and assigns ; also, the privilege of clearing, " deepening and widening the said river, not exceeding " thirty feet through said *Runnels'* land above the aforesaid " road."

On the same 19th January, 1821, *Frye* conveyed the same premises to the defendant, and on 11th June, 1821, the said *Frederick* conveyed the land and mills on the south side of the river to the plaintiff. After this, the defendant hoisted the gates and opened the sluice ways, and kept them hoist- ed and opened when not necessary for turning the machine- ry situate on his portion of the dam, and thereby deprived the plaintiff of the water necessary for his mills.

*S. Fletcher*, for the plaintiff.

*R. Bartlett*, for defendant.

WOODBURY, J. The deed to *Frye*, under which the de- fendant claims, purports to convey to him " the northerly " half of the mill dam" in dispute, and also " the privilege

Runnels
*vs.*
Bullen.

" of taking the water from any part of the said northerly " half of the mill dam for the use and benefit of said *Frye,* " his heirs and assigns." Under this grant, the defendant contends for a right totally to destroy the north half of the mill dam, or to draw water from it for his use in any quantities, in any manner, or at any period of time.

On the contrary, the plaintiff contends, that every thing, which passed under the grant was a right to use the north half of the mill dam for the purposes to which mill dams are usually devoted, without the legal power either to remove it, or permit decays so as to injure the plaintiff's enjoyment of the other half of the mill dam ; and that the right to draw water from it is qualified in a similar manner, so that the water cannot be drawn at unusual times, or in quantities not commonly wanted for mills situated like those on the dam conveyed, or for purposes not fairly within the scope of the grant.

At the trial we were inclined to think the power of the defendant less limited than we are now satisfied it must be on a just interpretation of the deed, and on a more full consideration of the nature of the interest conveyed.

From the circumstance, that when the deed was executed, mills were situated on " the northerly half" of the dam, as well as on the south half, it is reasonable to presume, that the " northerly half" was sold under an expectation it would be used to turn those mills, and not be altogether destroyed, or the gates so removed as to be tantamount to a total destruction of it for the purposes of a mill dam for the mills situated on both halves. Such a construction accords also with the elementary principle, that every person must so use his own property as not by the use to injure the rights of others. *Utere suo ut ne lœdas alterum. Vatelle b.* 1, *ch.* 20, *sec.* 254.—12 *Mass. Rep.* 224.

We have said the rights of others ; because the property of others may be lessened in value, or impaired incidentally ; and yet, if no rights are invaded, it is *damnum absque injuria.* 15 *John. Rep.* 213, *Platt vs. Johnson et al.*—17 *ditto* 100, *Panton vs. Holland.*—3 *Caines* 313, *Palmer vs. Mulligan.*

Among these last cases, are digging one's own soil without negligence or malice, and still so near the land of another as to lessen its value and occasion inconvenience. 1 *Sid.* 167.— *Com. Di. action on the case,* " *Nuisance.*" *C.*— 17 *John. Rep.* 92.—12 *Mass. Rep.* 229. So the digging of mines beneath a canal to its injury. 7 *East* 368, *Proprietors of R. & E. Canal Nav. vs. Bradley et al.* Or the erection of a new mill near an ancient one on the same stream. 15 *John. Rep.* 213.—3 *Caines* 313. And so according to some authorities is the neglect to repair a house to the injury of an adjoining house. 6 *Mod.* 314, *Tenant vs. Goldwin.*— 4 *Mass. Rep.* 577, *semb.*—12 *Mass. Rep.* 227.

But other authorities hold this last case to be actionable. *Co. Litt.* 56, *b.*—*Fitz. N. B.* 295.—*Kielway* 98.—4 *Mass. Rep.* 575.—2 *Cleri. Instruc.* 251.—11 *Mod.* 7. And where the decay is suffered in a portion of a party wall between cellars or houses, no doubt an action for the consequent damage can be sustained by the other owners. 1 *Dall.* 341, *Ingles vs. Bringhurst.*—*Fitz. N. B.* 127 *page*, 296 *number.* So it can be for the erection of a house, though upon the builder's own land, if it obstruct the sight from a house built twenty years earlier, or a less time, and purchased from the same proprietor. 12 *Mass. Rep.* 226, 159, *Story vs. Odlin.*—*Bull. N. P.* 89.—2 *Saund.* 175.—6 *Mod.* 116. So it can be for a spout or eaves, casting water upon another's land; (3 *Bl. Com.* 216.—5 *Co.* 101.—*Stra.* 634, 651,) or for the diversion of water above, or for the flowing it back below ; (9 *Mass. Rep.* 319.—13 *ditto* 420, 507,) or for digging beneath a house bought of the owner of the soil ;(1) or for the total severance and removal of one half of a divided house. 1 *Domat* 306.—*Bull. N. P.* 26, 79.—2 *Wils.* 313.—*Doe vs. Morrill, Rock. Feb.* 1809.

Where property is owned undivided, as between tenants in common, or joint tenants, probably this action might not be the best form of redress, since in such case a *writ de reparatione facienda* lies ; but still the remedy there for every neglect or misfeazance affecting another's rights, is no less ample than in other cases. *Co. Litt.* 56, *b.*, 200, *b.*— *Fitz. N. B.* 127.

(1) 7 East 368.

On a consideration of all these authorities, it seems to us manifest, that when two persons own separate houses, fields, &c. adjoining, either can use his own for any purpose and in any manner, not directly affecting a similar, or the customary use by his neighbor of his own houses and fields. Their rights are mutual and co-extensive; and any use not thus limited would be unreasonable and unlawful. When they own distinct portions of an article, as a building, bridge, mill-dam, &c., one of which portions cannot be actually severed, or permitted to decay, without directly impairing the customary use of the other, this principle seems to acquire new strength, and for any negligent or wilful act concerning one portion to the injury of the other portion, a suit can be sustained. Each has a direct interest in the preservation of the whole; the preservation of the whole is necessary to the enjoyment of a part; and any misuser of a part directly impairs the ordinary employment of the remainder.

Thus, in the case under consideration, a neglect to keep the north half of the dam in usual repair, or to keep down the gates the usual quantity of time, lessens at once the quantity of water against the south half of the dam, and, if carried to a great extent, may render that half with the mills thereon totally worthless. Each, however, is entitled to draw water for his own use from his portion of the dam in any quantities not exceeding what would naturally be drawn to accommodate mills situated at the dam. Because such quantities, whether used there or at mills some distance below, do not impair the rights of the other owner, by lessening the water against his half, more than it would be lessened, if the mills were situated at the dam. But should the dam be left unrepaired so as not to retain the usual quantity of water, or the gates be raised so long as to draw off more than is usual, or be kept raised constantly, or at times when mills at the dam would not generally be used, as when the water running, was too little to turn the machinery of a mill at the dam—it would be an use of the water, not probably contemplated at the time of the grant, not consistent with the customary employment of the other half of the dam, and hence, actionable.

RICHARDSON, C. J. Before we examine the clause in the deed upon which the question now to be decided arises, it may be useful to consider what would have been the rights of the parties, had no such clause been inserted in the deed.

Where several persons own severally mills situate upon different parts of the same stream, and each has an equal right to the use of the water, each is bound to use the water in a reasonable manner, and so as not to destroy and render useless the mills of the others. And if one shuts his gates and detains the water unreasonably, or lets it off in unusual quantities, so as to prevent those who are below from using it, he will be liable for the damage he occasions. 17 *Johnson*, 306, *Merrill vs. Brinkerhoff.*—8 *Mass. Rep.* 136, *Weston vs. Alden.*—10 *Johnson*, 241.—3 *Caine's Rep.* 307.—1 *Ventris* 237.—2 *Caine's Cases*, 86.—15 *John.* 213.—*Carthew* 116. —13 *Mass. Rep.* 507. So one may be liable for unreasonably diverting the water from its natural course to the prejudice of another. 6 *East.* 208.—1 *Wilson* 174, *Brown vs. Beet.* And if *A.* interrupt or divert the water, unlawfully, from flowing to the mill of *B.* by its ancient course, *B.* may lawfully enter upon *A.'s* land, and remove the obstruction. 13 *Mass. Rep.* 420.—9 *Mass. Rep.* 316.—9 *Coke* 53, *Batin's case.*—5 *Coke* 101, *Penruddock's case.*

A conveyance of one half of a dam is, in my opinion, a conveyance of the right to use one half of the water. The parties own the dam, neither as tenants in common, or as joint tenants, but each has all the title in his several part. Of the head water raised by the dam, they are, however, tenants in common. And in such a case, if one draws the water unreasonably, to the injury of the other, case may be maintained for the injury.

Lord Coke says, " if two several owners of houses have a " river in common between them, and if one of them corrupt " the river: the other shall have an action on the case."(1) (1) Coke Litt. 200, b.—13 H. 7, 26. He also says, " if there be two tenants in common, of a " wood turbarie, pischarie, or the like, and one of them doth " waste, against the will of his companion, his companion (2) Coke Litt. 200. " shall have an action of waste."(2) Where two have right of

68

common, in the same land, and one surcharges, the other may maintain case. 3 *Wilson* 287.—2 *W. Black.* 817.

Where two own severally several parts of the same dam, there is an implied contract or covenant between them, running with the land, that each shall keep in repair, his portion of the dam, so long as he uses the water ; and that as soon as one ceases to use the water, he shall permit the other to repair the whole. On this implied contract, our statute of June 16, 1801, entitled " an act relative to the repairs of mills, &c." is founded. 4 *Mass. Rep.* 559, *Carver vs. Miller.*—11 *Mass. Rep.* 325. And in such a case, each may use his portion of the water, in any reasonable way he pleases, but neither can wantonly waste the water, to the prejudice of the other.

We will now consider the clause in this deed, which gave to the grantee " the privilege of taking water from any " part of the northerly half of the dam for the use of him, " his heirs and assigns."

It is a maxim in the law,that the construction of deeds shall be reasonable, and according to an indifferent and equal understanding.(1) *Shepherd* illustrates this rule, by the following examples :

(1) Shepherd's
Touch. 86.

" If I grant to another common in all my manor, this shall be construed to extend to commonable places only, and not to my gardens,&c.

"If one grant me all his trees in his manor, by this, I shall not have his apple trees.

" If one grant me common for all my beasts, this shall be taken for all commonable beasts, and not for goats, and the like.

"And if one grant me to dig in all his land for tin, I may not, by this grant, dig under his house."

If we apply the maxim, laid down by *Shepherd*, to the construction of this deed,there seems to me to be no difficulty in the case. No reasonable man can suppose, that *Frederick Runnels* could have intended, by this clause in the deed, to give *Frye* the right to open the waste gates,and draw off all the water at his pleasure. If he did so intend, it is not

very easily perceived, why he did not grant the whole dam. Such a grant might have rendered his own mills useless.

I am, therefore, of opinion, that the true construction of this clause, is, that *Frye* should be permitted to take his half of the water, from any part of the dam, and for any purpose he pleased, and should not be confined in the use of it to his mills.

*New trial granted.*