Hillsborough
No. 7825

ROBERT WOOLSEY

v.

FRANCIS CARMICHAEL AND MARY J. CARMICHAEL

December 30, 1977

*Holland & Aivalikles,* of Nashua (*Mr. Francis G. Holland* orally), for the plaintiff.

*Bielagus & Solomon,* of Amherst, waived brief and oral argument for the defendants.

CANN, J. (By special assignment pursuant to RSA 490:3). Plaintiff brought a petition to enjoin the trespassing of defendants' cattle on his property and to enjoin defendants' interference with his right to maintain a certain dam and pond. Plaintiff also sought damages caused by the trespass of the defendants' cattle. The defendants in their answer disputed the boundary line in the vicinity of the dam and also counterclaimed for an abuse of criminal process.

A Master (*Robert W. Pillsbury*, Esq.) found that originally the tracts of land owned by plaintiff and defendants were in a single ownership by one Upham and that, when separated in 1951, there was a common boundary line which was the thread of an unnamed brook flowing through a pond which had been dammed. The master found that after separation of the tracts there was no evidence of twenty years' adverse use with reference to the dam and its spillway. He found that the common boundary line between the abutting tracts intersected the dam as shown by certain surveys, and as testified to by defendants' witnesses, Converse and Ackley. The master found that defendants' cattle had trespassed on plaintiff's property causing $111 in damages, and he recommended that damages be entered for the plaintiff on defendants' counterclaim. No injunctions were granted. Plaintiff's exceptions were transferred by *Mullavey*, J.

■ The interpretation of deeds is for this court, but the master could properly find the underlying facts regarding the location of the brook and the activities and intent of the parties. *Kalman v. Hutcheson*, 111 N.H. 36, 40, 276 A.2d 260, 263 (1971). There was evidence by plaintiff that he and his brother, who was the then owner of the abutting tract, reconstructed the dam in 1960, located the original spillway and rebuilt it on its present site. A witness, Converse, called by defendants, testified that he had been familiar with the property since 1923; that he understood the original dam was built by Upham in 1910 for the purpose of making an ice pond; that as a boy in 1925 he had helped his father and Upham repair the dam; and that he had helped repair the dam at several other times over the years. He said that at all these times the center of the brook and the spillway were not at the location claimed by plaintiff but rather were where the surveyor's stake was placed, west of the present spillway, at the location indicated by the surveys. This testimony was corroborated by witness Ackley who also had occasion to observe the pond and spillway for over fifty years.

In his report, the master found: "There is no credible evidence of a location of the stream or its thread other than as shown in [certain exhibits] . . . and as testified by witnesses Converse and Ackley." The master had the benefit of hearing the evidence and taking a view.

■■ The master had the task "to select what he believed to be the truth and in so doing he did not have to accept even uncontradicted testimony." *Kalman v. Hutcheson,* 111 N.H. at 40. There was evidence to support these findings made by the master, and therefore they must stand. *Clark v. Lake Shore Farm, Inc.,* 117 N.H. 953, 379 A.2d 1270 (1977); *Ciborowski v. Robinson,* 116 N.H. 723, 366 A.2d 493 (1976). The master could also find that no prior use precluded the defendants from using the pond to water cattle; these findings must stand. *Clark v. Lake Shore Farms, Inc. supra; Ciborowski v. Robinson supra.*

However, the master also ruled that "a portion of the dam and the spillway constructed or reconstructed by the plaintiff are on the defendants' premises without a right in plaintiff created by conveyance, agreement, law or passage of time. There is then no obligation on defendants vis-a-vis plaintiff to assent to the continuation of the dam or spillway on their property, nor to refrain from occupying their portion of the dam."

■ As disclosed by the evidence before the master, the dam, in various states of repair, and its pond have been in existence in the same location since 1910, before and after the subdivision into two tracts. The fact that part of the dam has been found by the master to be resting on defendants' land does not give defendants the right to remove the dam as the master's ruling suggests. When defendants acquired their tract in 1972, it passed "subject to all existing easements and burdens in favor of other lands which are apparent from the situation and the customary use of the property." *McCleary v. Lourie,* 80 N.H. 389, 392, 117 A.2d 730, 732 (1922); *Dunklee v. The Wilton Railroad Co.,* 24 N.H. 489, 496, 498 (1852).

We hold that both plaintiff and defendants have reciprocal easements in the dam, and reciprocal rights and duties to maintain it; each may require the other to fulfill the duty to maintain the dam, and may enter and maintain it in the event of the other's breach of that duty. *Dunklee,* 24 N.H. at 497–98; *Runnels v. Bullen,* 2 N.H. 532, 536–38 (1823); *Warren v. Westbrook Mfg. Co.,* 88 Me. 58, 33

A. 665 (1895); 78 Am. Jur. 2d *Waters* § 255, at 698–99. Although the defendants may occupy their portion of the dam, as the master ruled, they cannot destroy it.

*Exceptions sustained in part and overruled in part.*

LAMPRON, J., did not sit; FLYNN, J., sat by special assignment pursuant to RSA 490:3; all concurred.