Rockingham
No. 79-337

FRANCES E. MACKAY

v.

REAL D. BREAULT & a.

March 11, 1981

136

*McLane, Graf, Raulerson & Middleton P.A.*, of Manchester (*Arthur G. Greene* on the brief and orally), for the plaintiff.

*Emile R. Bussiere P.A.*, of Manchester (*Richard J. Walsh* on the brief and orally), for the defendants.

Bois, J.   This is an action in equity to quiet title to certain land located in Auburn. The petition of the plaintiff, Frances E. MacKay, alleges that a deed recorded in the Rockingham County Registry of Deeds erroneously purports to give title to property she owns to the defendants, Real D. and Lucille R. Breault.

The bill in equity was entered in the superior court and the matter referred to a Master (*Mayland H. Morse, Jr.*, Esq.). After admitting parol evidence to resolve a latent ambiguity found in the deed, the master recommended a ruling in favor of the plaintiff. *Randall*, J., approved the master's report and entered a decree correcting the deed and declaring the plaintiff owner in fee simple of the property.

The defendants appeal the decision, arguing that the master ignored the plain meaning of the deed and erroneously admitted parol evidence of the defendants' conduct. We hold that the court properly admitted parol evidence and affirm its decision.

Ownership of the subject parcel of land hinges on the location of a monument that determines the northern boundary line of the defendants' property. (Although the boundary actually is northwestern, running northeast to southwest, for convenience the parties stipulated to refer to the boundary as northern and to the direction of other monuments and bounds as if that course ran truly west to east. Our opinion will conform to that stipulation.) The defendants position this boundary 102 feet further north than does the plaintiff.

The defendants acquired title to their property in July 1968 by deed from Germaine M. Rajotte, who had inherited the property from Oscar Tirrell in 1961. Tirrell had acquired the land by deed in September 1957 from John T. McKinley. That deed was corrected by a subsequent deed in January 1958. Each of these deeds was recorded in the Rockingham County Registry of Deeds and described in identical words the northern boundary of the property as "beginning at a point in Deerneck Road about 318 feet easterly [southerly] from a stake and stones at the corner of land of Raymond Case; thence continuing . . . southerly [westerly] at right angles with the last named course . . . ." In October 1973, the plaintiff inherited the remaining McKinley property bordered northerly by Wilson Crossing Road, easterly by Pingree Hill Road (formerly Deerneck Road), and southerly by Rattlesnake Hill Road. (See Plaintiff's Exhibits #1 and #2 attached to this opinion.)

The parties agree that the location of the "stake and stones at the corner of land of Raymond Case," as stated in the deeds, determines the boundary. The defendants contend, however, that the corner of the Case land established by an agreement between Case and McKinley (the original titleholder who was then 95 years young), and recorded in the Rockingham County Registry of Deeds in 1967, is the same corner intended to be the reference point at

the time of the first conveyance in 1957 by McKinley to Tirrell, defendants' predecessor in title. The plaintiff, on the other hand, contends that, at the time of the first conveyance in 1957, the location of the corner of the Case land was in doubt and McKinley believed the corner to be located at a stake and stones at a culvert. The culvert is located one hundred two feet south of the corner later established by the Case/McKinley agreement. The plaintiff relies on the conduct of the various titleholders of the defendants' land, including the defendants, to show that the intent of McKinley and Tirrell was to use the stake and stones at the culvert as the monument determining the boundary.

The master received considerable evidence offered by the plaintiff that is inconsistent with the defendants' present argument. A view by the master revealed that a stone wall (the northern wall) would bisect the property now claimed by the defendants. The plaintiff's claimed boundary would run with the stone wall.

Evidence shows that, at the time of the first conveyance in 1957, the only access the titleholders used to enter the property was through a break in a stone wall along Pingree Hill Road that ran perpendicular to the northern wall. This break was used by Tirrell and subsequently by Rajotte, the defendants' predecessors in title, to enter the land. The defendants' position places this opening outside the perimeter of the land they now claim and thereby denies any means of entering the property until the wall was later breached at two locations. The plaintiff's position places the opening at the southern boundary of the defendants' land, which is consistent with Rajotte's testimony that the break marked the property's southern bound.

Rajotte also testified to having built a fireplace and to having maintained a lawn on land lying beyond the southern bounds of the land that the defendants presently claim. The defendants continue to maintain this lawn. This area would be part of the defendants' property according to the plaintiff's argument.

In 1972, the plaintiff retained the services of an engineer, F. R. Sullivan, to prepare a plan for subdividing her land. Before preparing the plan, Sullivan asked the defendant Real Breault to explain his understanding of the boundaries of his land. Sullivan testified that Mr. Breault indicated bounds consistent with those claimed by the plaintiff.

Although Mr. Breault disputes the engineer's testimony, another witness testified that, when the subdivision plan was presented to the Auburn Planning Board, Mr. Breault saw the plan but made

no objections. The plan's description and dimensions were inconsistent with the defendants' present position.

Later, Mr. Breault negotiated with the plaintiff and her real estate agent to purchase a parcel of land (lot 7), part of which the defendants now claim to own. During the negotiations, Mr. Breault did not claim that his ownership already included part of the area he sought to purchase.

In 1977, Mr. Sullivan agreed to purchase the parcel of land that Mr. Breault had sought to purchase earlier. During the course of a routine title search, the conflict over the location of the defendants' northern boundary arose.

■■ "The interpretation of deeds is ultimately for this court; however, our determination of the terms of a deed is based on the parties' intentions as properly found by the trial court." *Robbins v. Lake Ossipee Village, Inc.*, 118 N.H. 534, 536, 389 A.2d 940, 941 (1978). In construing a deed, the language employed is interpreted with reference to the surrounding circumstances known to the grantor at the time of the conveyance. *Id.* at 536, 389 A.2d at 942; *State v. Ladd*, 110 N.H. 381, 383, 268 A.2d 894, 895 (1970); *Bartlett v. LaRochelle*, 68 N.H. 211, 212–13, 44 A. 302, 302 (1894). If the language used permits the terms of the deed to be applied to two distinct subjects, a latent ambiguity exists in the deed. *Bell v. Woodward*, 46 N.H. 315, 332 (1865). Parol evidence is then admissible to resolve the latent ambiguity and determine which tract of land was intended to be conveyed. *Smart v. Huckins*, 82 N.H. 342, 347, 134 A. 520, 523 (1926); *Bartlett v. LaRochelle*, 68 N.H. at 213, 44 A. at 302–03; *Bell v. Woodward supra; see Seely v. Hand*, 119 N.H. 303, 306, 402 A.2d 162, 165 (1979); *Woolsey v. Carmichael*, 117 N.H. 1050, 1051, 381 A.2d 328, 329 (1977).

■■ At the time of the first conveyance in 1957, the 1967 agreement between McKinley and Case establishing the corner of the Case land was not in existence. Consequently, the 1967 agreement does not affect the interpretation of the deeds other than to suggest the possibility that the location of the Case corner was known in 1957, since the location was determinable in 1967. The presence of a stake and stones at the culvert, likewise, raises the possibility that this monument was known and is the one the deed intended to describe. The terms of the deed seem equally applicable to either possibility. Accordingly, consideration of parol evidence is necessary to resolve the question of which possible appli-

cation of the deed to the land was intended and, thereby, to determine the location of the boundaries of the land conveyed.

■■ Admissible parol evidence includes evidence of the conduct of the parties to the deed and of subsequent owners, which provides practical construction of the deed. *Kalman v. Hutcheson*, 111 N.H. 36, 39, 276 A.2d 260, 263–64 (1971); *Essex Company v. Gibson*, 82 N.H. 139, 146, 130 A. 846, 850–51 (1925); Loughlin, *Outline of Evidentiary Rules in New Hampshire: Part II*, 7 N.H.B.J. 363, 368 (1965). Testimony concerning Mr. Breault's statement of his understanding of his property boundaries, and testimony concerning Mr. Breault's public acquiescence to a subdivision plan showing boundaries consistent with plaintiff's construction of the deed, are evidence of the defendants' practical construction of the deed. Thus, the master was correct in admitting this parol evidence of the defendants' conduct to resolve the deed's latent ambiguity.

The question of where the boundaries are located by the terms of the deed was a question of fact for the master, as trier of fact, to decide. *Austin v. Ellis*, 119 N.H. 741, 742, 408 A.2d 784, 784 (1979); *Woolsey v. Carmichael*, 117 N.H. at 1051, 381 A.2d at 329; *Harris v. Crocker*, 97 N.H. 311, 312, 86 A.2d 853, 854 (1952). Because there is substantial evidence supporting the decision of the master, *Pugliese v. Town of Northwood*, 119 N.H. 743, 749–50, 408 A.2d 113, 117 (1979), the judgment is

*Affirmed.*

All concurred.