Rockingham
No. 81-194

## HAROLD A. MASTIN, JR. & a.

v.

## WALTER R. PRESCOTT & a.

April 7, 1982

*J. Christopher McGuirk*, of Newmarket, by brief and orally, for the plaintiffs.

*Griffin, Harrington, Brigham, Ritzo & Swanson P.A.*, of Portsmouth (*Lindsey R. Brigham* on the brief and orally), for the defendants.

DOUGLAS, J.   This case concerns the location of a boundary and ownership of a small, triangular plot of land. The parties own land in Newmarket, New Hampshire, and share a common boundary. The defendants' property lies to the north of the boundary line, and the plaintiffs' property lies to the south. The plaintiffs' deed specifies that their boundary runs westerly from a monument on the east to the Piscassic River, which the parties concede means Follett Brook. The defendants' deed describes the boundary as running westerly "about 256 feet to an iron pin set in a stone on the bank of the creek [Follett Brook]. . . ." The point that is 256 feet west of the eastern monument, however, falls 22 feet short of the brook. If this point marks the southwest corner of the defendants' property, then it is unclear who owns a small, triangular piece of land near the brook. Complicating matters further is the fact that the "iron pin set in a stone" cannot be found and the course of the brook may have been changed. Despite the missing iron pin, the defendants believe that their southwest boundary extends to the brook and does not end at the 256-foot point. Accordingly, they blocked off what they claim is the southwest corner of their land. This prevented the plaintiffs from crossing Follett Brook and gaining access to land they own on the western side of the brook.

The plaintiffs brought suit for equitable relief, claiming ownership of the triangular piece of land. The evidence they presented at trial failed to convince the court that the location of the iron pin could be ascertained. The land surveyor hired by the plaintiffs "couldn't say one way or the other . . . where the boundary was" or

who owned the triangular plot. He was uncertain not only because the monument was gone but because he believed that some of the land between Follett Brook and the 256-foot point was "filled land." Thus, the "iron pin set in a stone on the bank of the creek" might originally have been located at the 256-foot mark and not 22 feet to the west, where the bank of the creek is now located.

The trial court concluded that it was incapable of determining with certainty where the defendants' boundary ended or who owned the disputed triangle, which both parties claimed. Accordingly, the Master (*Mayland H. Morse, Jr.*, Esq.) recommended and the Trial Court (*Contas*, J.) decreed that the equities necessitated the finding that the parties and their successors in title should own the land in common, with equal rights.

■ The location of a boundary is a question of fact for the trier of fact to decide. *MacKay v. Breault*, 121 N.H. 135, 140, 427 A.2d 1099, 1102 (1981); *Austin v. Ellis*, 119 N.H. 741, 742, 408 A.2d 784, 784 (1979). Because the court committed an error of law, however, we reverse its decision.

■ The defendants' deed describes their southern boundary as running west "about 256 feet to an iron pin set in a stone on the bank of the creek [Follett Brook]. . . ." The law is clear in New Hampshire that monuments on the ground control over measurements in a deed. *Judge v. Field*, 112 N.H. 337, 340, 295 A.2d 459, 461 (1972); *Fagan v. Grady*, 101 N.H. 18, 21, 131 A.2d 441, 444 (1957). "[T]he bank of the creek" is a natural monument, and natural monuments control over artificial monuments (the "iron pin") as well as courses and distances ("about 256 feet"). *See* 6 G. THOMPSON, REAL PROPERTY § 3044, at 576 (J. Grimes ed. 1962). Applying these principles, we conclude that the defendants' southern boundary extends westerly to the bank of Follett Brook. The description providing that the defendants' boundary runs *"about 256 feet to an iron pin set in a stone on the bank of a creek"* is consistent with this interpretation.

■ Twenty-two feet separate the 256-foot point from the brook. Testimony at trial indicated that "some filling" had been done which extended the defendants' boundary west, towards the brook. The riparian owner has the right to accretions to his land caused by the gradual action of water. G. THOMPSON, *supra* § 3075, at 711. Some of the accretion in this case, however, was man-made, but it is unclear how much was caused by the natural flow of the brook. Although our case law does not address the problem of man-made accretion, given the facts of this case, we hold that the

defendant owns the accretions to his land. The master found it "clear that the plaintiffs and predecessors have used [part of the disputed triangular plot] for a period of more than 20 years openly under a claim of title." To establish a prescriptive easement, the plaintiff must prove "by a balance of probabilities twenty years' adverse, continuous, uninterrupted use of the land . . . [claimed] in such a manner as to give notice to the record owner that an adverse claim was being made to it." *Arnold v. Williams*, 121 N.H. 333, 334, 430 A.2d 155, 156 (1981) (quoting *Page v. Downs*, 115 N.H. 373, 374, 341 A.2d 767, 768 (1975)).

From the evidence before us, we conclude that the plaintiffs have proved their right to a prescriptive easement by a balance of probabilities. *See Arnold v. Williams*, 121 N.H. at 334, 430 A.2d at 156. Accordingly, they may continue to cross the defendants' land to gain access to the bridge crossing Follett Brook.

*Reversed.*

All concurred.