Rockingham
No. 82-501

## Herman J. Groth

v.

## Johnson's Dairy Farm, Inc.

December 16, 1983

*Earl L. Kalil, Jr.*, of Northwood, by brief and orally, for the plaintiff.

*Scammon & Gage*, of Exeter (*Peter A. Meneghin, III*, on the brief and orally), for the defendant.

PER CURIAM. This action to quiet title involves a dispute over the location of a boundary line and the ownership of a 9.68-acre parcel of land in Northwood. We affirm the decision of the court below that title to the disputed property be quieted in the plaintiff.

The parties own land in Northwood and share a common boundary. The plaintiff's land lies to the east of the boundary and the defendant's property to the west. The plaintiff acquired three adjoining parcels of real estate, described by three separate descriptions, by deed of Joan Cole dated January 13, 1981. Each parcel is

located in Northwood and is bound on the south by Turnpike Road and on the north by Canterbury Road. The first listed parcel is described as containing eighteen acres "more or less" and is immediately east of, and abuts, the plaintiff's second listed parcel. The second listed parcel is described as containing seven acres "more or less" and is immediately east of, and abuts, the defendant's land. The third listed parcel is described as containing two acres "more or less," and is southeast of the plaintiff's first listed parcel. (See attached diagram.)

The defendant, by deed from Samuel Johnson, dated January 30, 1979 (parcel II described therein), is the owner of a parcel of land in Northwood likewise bound on the south by Turnpike Road and the north by Canterbury Road. Parcel II is described as containing fifteen acres "more or less" and lies immediately west of, and abuts, the plaintiff's second listed parcel. (See attached diagram.)

The plaintiff claims title to a 9.68-acre parcel of land, lying between Canterbury Road and Turnpike Road and bound on the east and west by stonewalls, as his second listed parcel. The defendant claims ownership of the same parcel as being part of its parcel II.

After a trial with a view, the Master (*Mayland H. Morse, Jr.,* Esq.) recommended that title to the property be quieted and that the land be decreed solely as the land of the plaintiff. The Superior Court (*Bean,* J.) approved the master's recommendation, and the defendant appealed. We affirm.

The deed description of the plaintiff's second listed parcel indicates that it is bound by Canterbury Road on the north, by Turnpike Road on the south, and by a stone wall on the west. It is bound on the east by land "now or formerly of Alvin Roberts." Thus, to identify the plaintiff's second parcel, it is necessary to determine the location of the land formerly of Alvin Roberts, and in particular, the westerly boundary of Roberts' property.

At the trial, the parties agreed that reference to Alvin Roberts appears in the chain of title to the plaintiff's first listed parcel. The description of that parcel reads, in pertinent part, as follows:

> "thence westerly by [Turnpike Road] . . . to land now or formerly of Charles W. Johnson; thence northerly by said Johnson land as the wall now stands to [Canterbury Road] . . . ."

The master interpreted this description as calling for a wall as a monument establishing the westerly boundary of the plaintiff's first parcel. The master thus construed the description to require a stone wall at both the easterly and westerly boundaries of the plaintiff's

second listed parcel. He then recommended that the title to the 9.68-acre parcel of land be decreed to be in the plaintiff as his second listed parcel, acquired by him from Joan Cole.

The defendant argues that the master should have gone beyond the description of the first parcel in the plaintiff's deed and reviewed the compelling language of earlier deeds to aid in the determination of the westerly boundary of Roberts' land.

Both parties derive their titles from an early common ownership in Charles Emerson. The defendant contends that the calls of the deeds by which Emerson acquired the property make clear reference to lot and range lines. The defendant also argues that Emerson, in making the original conveyance in the plaintiff's chain of title, conveyed the same parcel he acquired. Thus, the defendant argues that the westerly boundary of the plaintiff's first parcel is the lot line between lot thirty and lot thirty-one, which is east of both stone walls. (See attached diagram.) In support of its position, the defendant points to a reference clause in the deed of the original conveyance that identifies the parcel as "being part of lot number thirty." The deed, however, goes on to describe particularly the bounds of the parcel and describes the parcel as bound on the west by the "land of Charles [Emerson] at the stone wall, thence southerly on said stone wall and land of Charles Emerson. . . ."

The master's report correctly states that the defendant's argument disregards the descriptions in the deeds in the plaintiff's chain of title, which have long included calls for walls at the westerly side of the adjoining property. It is well established that where, as here, there is a particular description that is certain and definite, it will prevail over the identifying reference in a prior deed. *Page v. Downs*, 113 N.H. 568, 570, 311 A.2d 130, 132 (1973). When the particular description is unambiguous, reference may not be used as evidence that the grantor intended to convey less than is precisely described, nor may the reference be used to create an ambiguity. *Id.* The reference in such a case is used only to identify the land. *Id.*

The defendant agrees with the master's determination that a wall establishes the westerly boundary of the plaintiff's second parcel. It argues, however, that the master erred when he required that there exist a stone wall at the easterly boundary because no such monument is called for in the deed. The defendant's argument ignores the principle that "[w]here land is described by reference to an abutting land and the abutting lines can be accurately determined, the line of the adjacent tract becomes a monument." *Kennett Corporation v. Pondwood Co.*, 108 N.H. 30, 33, 226 A.2d 783, 786 (1967).

■ The defendant contends that the master erred in finding that title to the 9.68-acre parcel should be decreed to be in the plaintiff. In support of its position, the defendant argues there was a discrepancy between the area thus deemed to belong to the plaintiff and the total area called for in the deeds. The master's report states that "the walls to which reference is made when properly located on the terrain provide monuments and calls of permanence entitled to precedence over . . . acreage references." This determination is in accordance with the traditional rule that monuments on the ground control over measurements in a deed. *Mastin v. Prescott*, 122 N.H. 353, 355, 444 A.2d 556, 558 (1982).

■■ The location of monuments and the determination of boundaries are questions for the master, as the trier of fact, to decide. *MacKay v. Breault*, 121 N.H. 135, 140, 427 A.2d 1099, 1102 (1981). Our review of the record indicates that there was substantial evidence to support the master's decision. Consequently, we will not disturb it. *Cooper v. Barilone*, 123 N.H. 203, 206, 459 A.2d 619, 622 (1983).

■ The defendant next argues that the master erred in finding that the evidence in the record was insufficient to establish that title to the disputed area was vested in the defendant by adverse possession. The master found that the defendant's "description was vague and general as it applied to the permissive use . . . under lease or oral arrangements with predecessors in the plaintiff's chain of title. Such use could not however give rise to title by adverse use or possession." It is well established that "permissive use can never ripen into title by adverse possession." *Avery v. Rancloes*, 123 N.H. 233, 238, 459 A.2d 622, 626 (1983). Whether a use is adverse or permissive is an issue of fact to be determined by the trier of fact. *Id.* Here, there was sufficient evidence for the master reasonably to find that the defendant's use was not adverse. Therefore, we will not overturn the master's findings.

■ Finally, the defendant argues that the master made certain errors that were prejudicial to it. Our review of the record indicates that although certain findings were erroneous, they were inconsequential. There is substantial evidence to support the master's recommendation, and we find no reason to disturb it.

*Affirmed.*