Hillsborough, }
May 2, 1922. }

### Robert H. McCleary *& a. v.* Dora L. Lourie *& a.*

To constitute a common law dedication of an easement, the property must be set apart for the public generally.

Where representations are made by a vendor to a prospective purchaser of lots as to the existence of easements as shown on a plan, with the intention that such representations should be acted upon, and thereby a sale is effected at a price enhanced by such easements, the vendor is estopped to deny their existence.

Property conveyed passes subject to all existing easements and burdens in favor of other land which are apparent from the situation and the customary use of the property.

Petition, for injunction.   Facts found by a master.   Each party moved for judgment upon the report.   The question as to the disposition of these motions was transferred without a ruling from the September term, 1921, of the superior court by *Marble, J.*

The plaintiffs, cottage owners and summer residents at White Birch Point on Gregg Lake in Antrim, seek to restrain the defendants from cutting trees, blasting, making excavations or otherwise com-

mitting waste on a tract of land bordering the lake, known as "The Grove" and also from interfering with the use of the same by the plaintiffs or the public. The plaintiffs claim a right or easement in the grove for access to the lake, and bring this petition in behalf of themselves individually and in behalf of all members of a voluntary association of cottage and lot owners, of which the plaintiffs are members, known as the White Birch Point Association. The defendants own other cottages and lots at White Birch Point and claim the right to exclude plaintiffs from the use of the grove for access to the beach and lake. It is agreed by counsel that if the plaintiffs have any easement or easements in the grove of which the defendants cannot deprive them, the injunction is to be granted. A preliminary injunction having been granted by the presiding justice, the question presented is whether such injunction shall be made permanent, or whether plaintiffs' petition shall be dismissed.

Helen C. Thayer, owner of lands bordering Gregg Lake, caused a survey thereof to be made and a plan and blue print to be drawn, showing an inn, cottages, building sites, proposed highways, the grove, beach, and boat landing, entitled "Plan of Lots at White Birch Point, Antrim, N. H., surveyed by John D. Hutchinson, August 1911." The plan was recorded in the registry of deeds on Sept. 8, 1914.

The plan of the premises shows that the lake and park were the principal attraction, and that the property was laid out in view of that fact. Plaintiffs' lots are on the opposite side of Lake Road from the lake and the grove which lies between the road and the lake is their only means of access to the latter. Mrs. Thayer sold thirty-two lots to the plaintiffs and others. Each deed, after reciting that the lot conveyed was a part of the tract known as White Birch Point, further described it by metes and bounds, and as "being Lot No.    on plan as surveyed by John D. Hutchinson in August 1911," the number being in each inserted.

In August, 1914, Mrs. Thayer conveyed to one Eager the larger part of the balance of her holdings by a deed which included the grove and beach, but which made no specific mention thereof by grant or reservation. Reference, however, was made to the plan to identify by number certain lots reserved by her. The Eager title came to the defendants by intervening conveyances likewise without reservations in the grove or beach, except so far as the same was to be implied from a reference to the Hutchinson plan contained in each deed.

The master finds that it was the intention of Mrs. Thayer, when

the plan was made and the lots sold, to set apart the grove for use in common by the cottagers, those who should purchase lots, and for the guests at the inn but not for the public generally; that at the time the defendants received their deed, they had no actual knowledge of such intention; but that from the plan itself, from the wording of the contract which they had with their immediate grantor, and from what they saw when they examined the property as to the appearance of the grove, beach, cottages, and the inn, they were chargeable with knowledge of the use to which the grove had been put by former owners, and were at fault for not making further investigations.

The master rules, as a matter of law, that to constitute a common law dedication, the property must have been set apart for the use of the public generally and finds that, the grove having been set apart by Mrs. Thayer for the use of a limited number of persons, there was no common law dedication.

Other facts appear in the opinion.

*Harry P. Greeley* (by brief and orally), for the plaintiffs.

*Ivory C. Eaton* (by brief and orally), for the defendants.

Snow, J. There being no specific grant to the plaintiffs of an easement in the grove, nor express covenant with respect to its use, the plaintiffs' interest therein, if any, under the facts in this case must be established by way of estoppel.

Mrs. Thayer, plaintiffs' grantor, caused the Point to be surveyed and plotted pursuant to a purpose to develop White Birch Point as an exclusive summer colony. It is clear from the character of such an enterprise and the location and situation of the property, as disclosed by the survey and plan, that the lake was regarded as an essential feature of the proposed development. It was the grantor's apparent purpose to utilize this feature by means of the grove adjoining the beach which connected the water front with the system of proposed roads. The advantages of the lake, beach and grove were accordingly stressed in elaborate advertising matter and proclaimed to patrons as inducements to the purchase of lots. Prospective purchasers were shown the plan and given to understand that the grove and beach were to be kept open for their use. The master has found that these areas were convenient and beneficial to the purchasers, that the representations were made with the intention that they should be acted upon, and that they operated as inducements

to the several purchasers. Having thus induced the plaintiffs to purchase lots enhanced in value by rights in the grove and beach, the grantor and those claiming under her with knowledge are estopped to deny the existence of those rights. *Walker* v. *Manchester*, 58 N. H. 438, 441; *Douglass* v. *Company*, 76 N. H. 254, 256.

The practical construction of the grants by the immediate parties thereto was of such a character as to put anyone dealing with the property upon inquiry as to the authority under which the grantees were claiming to exercise rights of control and passage over the grove. The plaintiffs, from the dates of their several deeds, used the grove and beach as common recreation ground. Both grove and beach were in daily and extensive use for the seasonable period of each year. This use left obvious marks upon the ground in the form of several paths leading from Lake Road across the grove to the lake. In 1912, an association of cottage owners was formed, which from time to time helped to clear up and make improvements upon the grove and beach, and contributed to the construction of a stone pier extending into the lake and of a float moored adjoining the beach. It is difficult to conceive how such *indicia* of control and dominion could have escaped the attention of one seeking to purchase.

Each deed in defendants' chain of title contained a specific reference to the Hutchinson plan. The plan thus became an essential part of each conveyance, and put the purchaser upon inquiry as to all facts which would have been disclosed by an examination of the property in the light of the plan. Inquiry would have elicited information as to the existence and extent of the rights which were being openly and continuously exercised. Under such circumstances, it must be presumed that the several owners in the defendants' chain of title had knowledge of the rightful use which was being made of the property. Property conveyed passes subject to all existing easements and burdens in favor of other lands which are apparent from the situation and the customary use of the property. *Dunklee* v. *Railroad*, 24 N. H. 489, 495, 496; *Horne* v. *Hutchins*, 71 N. H. 128, 136.

The acceptance by the cottagers of unusual privileges in the grove by special permission of the proprietor, such as the privilege of holding picnics, did not forfeit or diminish their rightful interest in the easements therein nor excuse a prospective purchaser of the grove from making inquiries as to the extent and limitations of such easements. Notices published or posted by the proprietor, forbidding the use of the beach, but which were designed to prevent depredations and to keep out trouble makers and did not come to the attention of

the cottagers, nor affect the customary enjoyment of their easements, are immaterial. The error of the defendants' immediate grantor in supposing that the beneficiaries of the easement were confined to patrons of the inn did not excuse his failure to inquire; nor did the recital in his deed to the defendants of his understanding that there were no deeded rights of way over the grove to the lake enlarge the rights conveyed, as against the plaintiffs.

The defendants, before taking title, examined the Hutchinson plan, and knew it was recorded. They knew of the use of the grove and beach by the cottagers, looked the property over thoroughly, saw the boat landing and float and the paths leading to them, but sought no explanation of the obvious dominion by the cottagers over the property of which they were contemplating the purchase. The fact that their proposed use of the property as a site for a girls' camp depended upon the exclusive use of the beach and grove does not help them, but only renders less excusable their failure to seek an explanation of its open use and occupation by others. It cannot be assumed that inquiries would have failed to elicit the truth. The finding of the master that the defendants were chargeable with knowledge of the use to which the grove had been put and were at fault for not making further investigations seems to be abundantly sustained by the subsidiary findings of fact. They did not escape the effects of their knowledge by reliance upon the report of their attorney as to the record title; nor were their rights enlarged by the unauthorized admission of the president of the association that it had no legal rights in the grove.

The ruling of the master that, to constitute a common law dedication, the property must be set apart for the public generally is sustained by the authorities. 18 Corpus Juris, 46, 50. It is a significant fact that no member of the public, as distinct from the cottage and lot owners who have an easement in the *locus in quo*, appears to be here claiming any rights. The subsidiary finding of fact of the exclusive character of the enterprise sufficiently sustains the ultimate finding as to the limited character of the appropriation. The limitation of the use of the facilities to the members of the summer colony was presumably one of the inducements to the purchase of lots by them. The main purpose of the promoter and of her patrons would have been thwarted if the public generally were to be admitted as a matter of right to equal use and enjoyment with them of the grove and beach.

No question is made as to the terms of the injunction. Under

the agreement of the parties, the plaintiffs are entitled to a restraining order. The order must therefore be

*Injunction made permanent.*

All concurred.