Cheshire,
Oct. 2, 1923.

THE NEW ENGLAND BOX COMPANY & a. *v.* JENNIE WOOD & a.

Mere non-user of an easement for the period of limitation will not destroy the right thereto whether acquired by deed or by prescription.

BILL IN EQUITY, brought by the plaintiffs against the defendant tannery company and others to determine the plaintiffs' right to flow the defendants' lands by a dam located on plaintiffs' land. The facts were heard by masters, upon whose report a decree was made establishing the plaintiffs' right to flow the defendants' lands by maintaining their dam to the height of six and a half feet. The plaintiffs on March 27, 1898, had the right to so maintain their dam and they or their predecessors in title had exercised the right since 1830. On the date first mentioned the dam was destroyed by a freshet. Since September, 1914, the dam has not been maintained

above five feet in height, but the plaintiffs have never intended to abandon the right to maintain it to the height of six and a half feet. The plaintiffs to establish their right of flowage against the defendant tannery company relied upon evidence of uninterrupted exercise of the right from 1830 to 1898. Since the dam went out in 1898 the defendant tannery company have made no use of the land inconsistent with the plaintiffs' right of flowage.

Upon the entry of the decree against them, the Winchester Tannery company excepted upon the ground that the plaintiffs' title as against them being evidenced only by use was lost by non-exercise of the right for twenty years and filed the foregoing bill of exceptions, which was allowed by *Kivel,* C. J.

*Philip H. Faulkner* and *Chester B. Jordan* (*Mr. Jordan* orally), for the plaintiffs.

*Roy M. Pickard* (by brief and orally), for the defendants.

PARSONS, C. J.   Upon evidence assumed to be competent and sufficient, as no exception is taken because of its insufficiency on either ground, it is found that the plaintiffs on March 27, 1898, owned the right to maintain their dam to the height of six and a half feet as they now claim, and to flow the land of the defendants by maintaining the dam at that height. On that date the dam was swept away by a freshet. The dam has not been rebuilt to its former height, and the question in controversy is whether the plaintiffs still own the rights of flowage owned and exercised by them in March, 1898.

As to the land of the defendant tannery company, it is found that for more than sixty years prior to the destruction of the dam the plaintiffs and their predecessors in title claimed and exercised the right of flowage to the extent now claimed. As suggested, it is not contended the plaintiffs' right was not established as existing in March, 1898. The only question is whether it has been lost by non-user for over twenty years. During the non-exercise of the flowage right there has been no adverse use of the flowable land by the owners. There has been no abandonment in fact by the plaintiffs of their rights as they existed at the destruction of the dam. There was no evidence of a grant from the owners of the land now held by the Winchester Tannery company, other than the claim and exercise of the right for over sixty years, and these defendants contest the decree upon the ground that abandonment of an ease-

ment proved by use is conclusively presumed from twenty years' non-exercise of the right. No length of time of mere non-user will operate to impair or defeat an easement acquired by deed. *Howard* v. *Britton,* 67 N. H. 484. This is conceded, but the defendants contend that there is a distinction between easements acquired by deed and those acquired by prescription. That a distinction is recognized in the books is stated in *Howard* v. *Britton, supra.* What it is, is not stated, and as the easement involved in that case was acquired by deed, the question was not presented. There are numerous cases like *Howard* v. *Britton* in which the right claimed being proved by deed a similar statement is made.

It is not easy to discover any legal difference between the effect of a deed proved by the writing itself and one proved by circumstantial evidence. *Arnold* v. *Stevens,* 24 Pick. 106, 118. See Angell on Watercourses (7th *ed.*), note *pp.* 419, 420, *s.* 252. There is no logical basis for a distinction between a grant proved by documentary evidence and one proved by long enjoyment. *Veghte* v. *Company,* 19 N. J. Eq. 142.

The cases are few which go so far as to sustain the defendants' present contention. The earliest case referred to in the books, *Prescott* v. *Phillips,* said to have been decided in 1797, is not found in any volume of reports. It is cited from Evans' Pothier on Obligations. The translator relates it as a case within his experience in which the defendant had an ancient mill weir (how obtained is not stated) which he allowed to fall into decay, and after a period of twenty years another mill was erected, and it was held the cesser of twenty years was an extinguishment of the right although no act had been done by the owners of the adjacent land adverse to the right. This is precisely the defendants' case and exactly supports their contention. Evans, however, criticises the conclusion of the court, saying it ought not to have been presumed the right was lost or abandoned, for one reason because no inconsistent or adverse enjoyment had been shown. One English case decided in 1814 at *nisi prius, Lawrence* v. *Obee,* 3 Campbell 514, is reported, which directly supports the defendants' contention. This was an action on the case for erecting a privy in the defendant's house which was a nuisance to the adjoining house of the plaintiff. It appears that the privy when first erected was no nuisance to the plaintiff, but she afterwards struck out a window in the wall of her house immediately over it; and that then unpleasant smells were introduced into the house through this window. There was the mark of an

old window in the place where this window was struck out, but it had been filled up with brick and mortar about twenty years before the privy was erected. Lord *Ellenborough* held, the report says, that from the window having been shut up twenty years the case stood as if it never existed, and that the plaintiff having brought the nuisance upon herself by opening the window had no right of action. According to this case a right to maintain a nuisance was obtained by less than twenty years' user, while the plaintiff lost her window right by failure to open it for twenty years.

On the other hand, in *Ward* v. *Ward*, 7 Exch. 838, when the defendant claimed an immemorial right of way, it was said by *Alderson*, B.: "The presumption of abandonment cannot be made from the mere fact of non-user. There must be other circumstances in the case to raise that presumption. The right is acquired by adverse enjoyment. The non-user, therefore, must be the consequence of something which is adverse to the user." No well considered modern case has been found holding that mere non-use of an easement for the statutory period will destroy the right, however proved.

*Rhodes* v. *Whitehead*, 27 Texas 304; s. c., 84 Am. Dec. 631, states that the great weight of authority is opposed to the instruction given the jury that an easement proved by use for the statutory period could be lost only by adverse possession or denial of the right for like period by the owners of the servient tenement. This conclusion is not sustained by the authorities cited or the examination that has been made in this case. No other modern decision has been found sustaining such a rule. The opinion denies the claim that "The servitude or easement upon the property of another is acquired by prescription, because the length of time during which it has been enjoyed becomes *presumptio juris et de jure* of an original grant. And that the grant thus conclusively established, must be regarded as vesting as complete and perfect a right as if the express grant of which it serves as evidence was itself before the court." It is too late here to consider the validity of the answer made by the Texas court to this claim. The rule rejected in this Texas case was adopted as the law of this state in 1855 and as a rule of property cannot now be disturbed. In *Wallace* v. *Fletcher*, 30 N. H. 434, 448, the language found in 2 Green, Ev. 539, was quoted with approval as follows: "By the weight of authority, as well as the preponderance of opinion, it may be stated as the general rule of American law, that an adverse, exclusive and uninterrupted enjoy-

ment for twenty years of an incorporeal hereditament affords a conclusive presumption of a grant, or a right, as the case may be, which is to be applied as a *presumptio juris et de jure*, wherever by possibility a right can be acquired in any manner known to the law." Applying this principle, the court say further (*p.* 452), "In cases where the party claiming title under such presumption, may find it necessary to rely upon the presumption of a deed, we think that long-continued user is evidence of a lost or non-existing grant, from some person who might, at some time, have made a valid grant to some person capable of accepting it." If the plaintiffs to maintain their title are compelled to rely upon a deed, the evidence authorizes the presumption of such a deed, and this title it is conceded is not destroyed by mere non-user.

The modern rule of the effect of non-user goes no farther than the statement in 9 R. C. L., *p.* 811: "By the prevailing rule, while the nonuser for such period is evidence of an intention to abandon the easement, it is open to explanation, and may be controlled by proof that such intention did not exist." See 3 Kent, Com., *448, *449. The concluding statement, "but it has been decided on the other hand that the presumption is conclusive," is not supported by *Webber* v. *Chapman*, 42 N. H. 326, the only case cited as authority therefor. The question in *Webber* v. *Chapman* was whether an individual could obtain title against the public by adverse possession. The conclusion that he could was overturned by the legislature as soon as the judicial conclusion announced in the case was known. Laws 1862, *c.* 2822; P. S., *c.* 77, *s.* 7; Reporter's note, 49 N. H. *p.* 257. The point decided in the case was judicially overruled in 1870. *State* v. *Company*, 49 N. H. 240, 257. The view expressed in 1870 has been repeatedly reaffirmed. *Thompson* v. *Major*, 58 N. H. 242; *State* v. *Roberts*, 59 N. H. 256; *Collins* v. *Howard*, 65 N. H. 190; *Manchester* v. *Hodge*, 74 N. H. 468; *Harrington* v. *Manchester*, 76 N. H. 347, 351; *State* v. *Hutchins*, 79 N. H. 132, 139. If, therefore, *Webber* v. *Chapman* were authority for the proposition to which it is cited in Ruling Case Law, the authority would be of no value now. But as already stated, that point was not presented by the case and there is nothing in the discussion which supports the proposition to which it is cited.

It is true it is said, *p.* 335: "In the case of private ways, a non-user for twenty years affords a presumption that the right never existed, or has been extinguished in favor of some adverse right. As an enjoyment for twenty years is necessary to found a presumption

of a grant, the general rule is that there must be a similar non-user to raise a presumption of a release." In citing the language of Judge *Sargent* to the proposition that mere non-user raises a conclusive presumption of abandonment, the fact that the non-user referred to is described as "similar" to the use by which such a right can be gained must have been overlooked. Mere enjoyment of an easement for the statutory period will not conclusively establish the prescription. Such enjoyment must be open, under claim of right, with the knowledge and acquiescence of the owner of the servient tenement. *Wallace* v. *Fletcher*, 30 N. H. 434. All that Judge *Sargent* says is that an easement may be lost as well as gained by adverse possession.

In the case under discussion the adverse occupation of the land in which the public right of way was claimed was fully proved. That the court in discussing the extinguishment of a like private right had in mind a similar possession of the land in which the right was claimed is made clear by the discussion of the character of the title which could be acquired by adverse possession as set forth in *Wallace* v. *Fletcher*, 30 N. H. 434. The author of the opinion had in mind the acquiring of title by prescription. He says, the "presumption arises upon proof of these facts." The facts in his mind were those essential to establish such title, the open, exclusive possession under claim of right with the knowledge and acquiescence of the owner. There is no suggestion of a different rule of evidence whether the right claimed was proved by production of a deed or by adverse occupation. In fact, in speaking of the highway right, *p.* 337, he says, "Nor do we see any cause for making a distinction between a highway by dedication and one laid out in any other way by the laws in force upon that subject, or acquired by any process or means whatever."

Nothing said in *Webber* v. *Chapman* aids the defendants. They failed to establish a title by possession adverse to the plaintiffs' claim. There is no contention that the findings of the absence of an intention on the part of the plaintiffs to abandon their right or of the want of a possession in the tannery company adverse thereto are not sustained by the evidence. What circumstances in connection with non-user would justify a finding of abandonment or would estop the plaintiffs from again exercising the right which it is found they owned in 1898, are questions which are not presented.

*Exception overruled.*

All concurred.