Cheshire,
No. 4332.

### Michael D. Bogosian *v.* Abraham N. Fine.

Argued November 3, 1954.

Decided January 19, 1955.

*Joseph T. Cristiano* (by brief and orally), for the plaintiff.

*McLane, Carleton, Graf, Greene & Brown* (*Mr. Brown* orally), for the defendant.

KENISON, C. J. I. The defendant Fine has operated a ladies' ready-to-wear garment store on the ground floor at 5 Main Street, Keene, for about twenty-five years under his trade name of "The Royal." He is lessee of the premises. He has also carried on a fur business on other floors at the same address under the trade name "Royal Furriers." In 1950, the defendant decided to sell the ready-to-wear part of the business and carry on only the fur business. The plaintiff, not having the necessary capital, purchased part of the business with an option to purchase the remainder.

The purchase and sale agreement took the form of a bill of sale and a sublease, both dated June 23, 1950. The sublease from the defendant to the plaintiff demised one-half of the ground floor store known as the Royal located at 5 Main Street, Keene. "The one-half of said store, to be occupied by the Lessee, his heirs and assigns, shall consist of the front one-half of said store, and each shall have the right to use one-half of the window space. The Lessor shall have the right to maintain an office in the rear of said store." The ground floor store of the defendant consisted of two rooms, a front room and a back room connected by a ramp.

The master on all the evidence awarded the plaintiff the entire front room of the store because of the construction placed upon the lease by the parties themselves following its execution. It appeared that after the lease was executed, the plaintiff installed the merchandise which he had purchased from the defendant in racks and fixtures along the entire south wall of the front store and later gave the defendant permission to use the racks on the north wall for displaying his merchandise, with the exception of a small portion of the racks nearest the front of the store. The parties also moved the office in the rear of the front store against the rear wall, replaced a dressing room located in that space and constructed a temporary dressing room in a corner of the rear store which was used by the customers of both parties.

The practical construction of a contract adopted by the parties thereto and the course of business followed by them is evidence of their common understanding of the meaning of their contract and the result they expected to accomplish thereby. *Horton* v. *Company*, 86 N. H. 472. While a practical construction of a contract is not binding on strangers, it is binding on the immediate parties. *Boston & Maine Railroad* v. *Railroad*, 86 N. H. 217, 224; *Berke Company* v. *Bridge Company*, 98 N. H. 261, 265. "There is no surer way to find out what the parties meant, than to see what they have done. Self-interest stimulates the mind to activity, and sharpens its perspicacity. Parties in such cases often claim more, but rarely less, than they are entitled to. The probabilities are largely in the direction of the former." *Brooklyn Life Ins. Co.* v. *Dutcher*, 95 U. S. 269, 273. The practical construction of a contract adopted by the parties is generally followed in determining its legal effect. 3 Williston, Contracts (rev. *ed.*) s. 623; 3 Corbin, Contracts, s. 558. Since the front store is about seventy-five per cent of the total square footage of the entire ground floor, the defendant

claims that the plaintiff in no event can claim more than fifty per cent of the total area of the ground floor. The evidence does not indicate that any such claim was made previously or that the parties divided the premises by any such formula. Under the circumstances the extent of the demised area was not so free from ambiguity as to preclude evidence of the parties' conduct under the lease. The master's findings and rulings as to the area demised and the rights acquired by the parties under the lease are supported by the evidence and a reasonable construction of the written documents of sale and lease. See Restatement, Contracts, s. 235, *comment* e.

II. By the bill of sale the plaintiff purchased all the ready-to-wear stock at the Royal "with the exception of Women's and Misses coats and suits" and it was also provided that neither the plaintiff nor the defendant would "carry any lines competing" with the other. The plaintiff had the right to sell dresses but the defendant reserved the right to sell coats and suits. Sometime in 1951 the plaintiff introduced for sale two-piece garments consisting of an unlined jacket and skirt to be sold as one unit. There was considerable conflict in the evidence as to whether these two-piece garments were properly called dresses, or suits or coat-dresses or suit-dresses and there was also conflict in the evidence as to when and how the dispute arose. The master found that the sale of the garments by the plaintiff did not violate the terms of the bill of sale since their price range was from $6.00 to $17.95, while the price range of defendant's merchandise was from $16.98 to $29.50. This was a permissible conclusion from the evidence although it was not a compelled one. There was evidence that the defendant initially approved of the plaintiff's introduction of the sale of the garments and whether the defendant's final protest occurred in 1951, or in 1952 as found by the master, did not indicate that the master's conclusions were prejudiced or inconsistent. *Golding-Keene Co.* v. *Insurance Company*, 96 N. H. 64, 70. This case will not illuminate the twilight area between suits and dresses but it does resolve the issue of competition between the parties in favor of the plaintiff as determined by the master.

III. In addition to the merchandise and business sold by the defendant to the plaintiff, the bill of sale provided that the plaintiff "shall have the right to purchase the coat and suit business above reserved by A. N. Fine at the invoice price upon giving A. N. Fine seven (7) days notice . . . " at an increased monthly

rental. The sublease, which runs for a period of nine years until October 1, 1959, was executed on the same day as the bill of sale. Both these documents were part of the same transaction and are to be construed together. *Hill* v. *Huntress*, 43 N. H. 480. The right of plaintiff to purchase the retained coat and suit business of the defendant created an option which was supported by a valuable consideration. *Barclay* v. *Dublin Lake Club*, 89 N. H. 87. Neither the bill of sale nor the sublease fixed the time within which the option expired "and this being the case, it is to be presumed that the parties intended it should not expire until after the lapse of a reasonable time." *New England Box Co.* v. *Prentiss*, 75 N. H. 246, 247; 5 Williston, Contracts (rev. *ed.*) s. 1441. See *Kann* v. *Wausau Abrasive Co.*, 81 N. H. 535.

In determining that a reasonable time within which the plaintiff could exercise his option was the unexpired term of the lease itself, there were several factors which make the master's finding a reasonable one. The plaintiff was inexperienced, without sufficient capital to purchase the coat and suit business, and required considerable time in his new venture to be able to exercise the option. These factors were known to the defendant. Other provisions in the contracts indicate that no fixed time limit was intended by the parties. The bill of sale provides that the defendant agrees "not to sell said coat and suit business to any third party without first obtaining the written permission" of the plaintiff. Paragraph 3 of the bill of sale gave the plaintiff the right to purchase the store fixtures "at any time that he and A. N. Fine may agree upon a fair price for said fixtures." Without passing on the definiteness of this particular provision, it clearly indicates that the option need not be exercised by June 1, 1952, as contended by the defendant.

IV. The issue as to the use of the trade name "Royal" by the plaintiff is more difficult. The master's findings are as follows:

"Since the execution of the lease and bill of sale, the plaintiff, at the defendant's insistence, has conducted his retail business under the name of 'Royal Ready to Wear.' To permit the defendant now to prevent the plaintiff from continuing to use that tradename and to use it himself would be most inequitable. The Master finds that the plaintiff has the right to operate his business under the name of 'Royal Ready to Wear,' even though the defendant may, at some time have used that name and, since the bill of sale was given, has registered it as his own."

It is to be noted that neither the sublease nor the bill of sale give the plaintiff any rights with respect to the use of the trade name "The Royal" or "Royal Ready-to-Wear." The only reference to "Royal" is that used for descriptive reference to the defendant and the defendant's store name to establish the location of the premises in the lease. The plaintiff acquired no right to the use of the name from either the bill of sale or the sublease. It is not disputed that the defendant has a property right in the name which is valuable and upon which he has spent considerable money in its development and registration. R. L., c. 186, s. 10; R. L., c. 207-A, as inserted by Laws 1949, c. 219. Although the defendant permitted and encouraged the use of the trade name for the purposes of advertising and sales, this did not convert a revocable license into an irrevocable grant or raise an estoppel against the defendant. *Conway Bank* v. *Pease*, 76 N. H. 319.

The record shows that much confusion in the public mind and in the mind of creditors has resulted from joint use of the trade name, "The Royal" and "Royal Ready-to-Wear." This has affected credit ratings, good will and business reputation. The defendant could properly revoke the permission to use the trade name which he originally allowed. *Batchelder* v. *Hibbard*, 58 N. H. 269. The plaintiff did not buy the trade name and is not entitled to continue to use it to the damage of the defendant and to the confusion of the public. *Nardini &c. Co.* v. *Sterling Co.*, 93 N. H. 364; *Purcell* v. *Summers*, 145 F. (2d) 979; Restatement, Torts, ss. 717, 730.

The decree is affirmed in all respects except as it relates to use of trade names wherein the defendant is entitled to a decree in his favor.

*Decree affirmed in part and reversed in part.*

All concurred except DUNCAN, J., who was in doubt as to part I.